FILED
 2006 Jan-31 PM 04:52
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ROBERT G. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 04-B-1053-W |
| | ) |
| ANTHONY J. PRINCIPI, Secretary of | ) |
| the Department of Veteran Affairs, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 16.)[1] Plaintiff Robert G. Smith has sued his former employer, the Department of Veteran Affairs, through Anthony J. Principi, alleging that defendant terminated him on the basis of his race and awarded a contract to a white employee, in violation of federal law. (Doc. 1 ¶¶ 10-11.) Plaintiff also alleges causes of action for outrage, negligent supervision, negligent selection, negligent infliction of emotional distress, and conspiracy. (*Id*. ¶¶ 12-16.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 16), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff, Robert G. Smith, an African-American male, alleges that defendant discriminated against him on the basis of his race. (Doc. 17, Ex. 2 at 7, 8-9.) For approximately three years, until his termination on December 20, 2001, plaintiff worked as a barber for the Veterans Canteen Service [hereinafter"VCS"] at the Veterans Hospital in Tuscaloosa. (*Id*. at 7.) Plaintiff was paid a commission based upon the barbering services he performed. (*See* doc. 24 at 2.)

Plaintiff was given a list of patients on which he indicated services that had been performed. (Doc. 17, Ex. 2 at 20.) He testified:

> . . . When the list was made for me to do a name on my list, the money would be [taken] out of the person's account. . . .
>
> . . . And if I left their name on the list, they would be charged. If I marked on there they did not receive a service, they wouldn't be charged.

(*Id*.) Canteen Chief, David D. Dvorak, testified that, according to hospital procedure, a barber would locate a patient's name on his list and "put a check mark or something" after the service was completed. (*Id*., Ex. 4 at 18-19.) Dvorak testified that nurses, employees in the Patient Funds Office, and family members complained that plaintiff had charged patients for services that were never received. (*Id*. at 9-10; *see also id*., Ex. 6 at 5-13.)

On May 25, 2000, Dvorak sent plaintiff a Letter of Counseling, which stated that 36 patients had not received shaves for which they had been charged. (*Id*., Ex. 3 at 1.) The letter stated that plaintiff could be terminated if he did not immediately improve. (*Id*.)

3

On August 15, 2001, Dvorak again wrote up plaintiff for charging a patient for services he had not performed. (*Id*. at 2.) This letter stated, "[Plaintiff] has been counseled on the correct procedures to do his paperwork before and has assured me he will do things correctly. . . . Any more discrepancies in [plaintiff's] paperwork could result in his termination from the VA." (*Id*.)

In November 2001, more complaints were made about plaintiff charging patients for services not performed. (*See id*., Ex. 6 at 6-13.) Specifically, complaints were made that plaintiff had charged at least seven patients for services that they had not received. (*Id*.) Based on these complaints, Dvorak formally proposed that plaintiff be terminated for inappropriately charging patients' accounts for barbering services that he had not performed. (*Id*., Ex. 6 at 2.) He sent a letter to plaintiff, which stated:

> This letter constitutes official notification of my proposal to remove you from your position of barber . . . based on the following:
>
> Charge: Inappropriate charge of VCS customer accounts for barbering services not rendered.
>
> Specification: Based on information received from customers, patient family members and VA Medical Center staff over the last several months it was determined that you inappropriately charged VA Medical Center patients and other VCS customers for full barbering services . . . that they did not receive. Specifically, you were certifying by your signature on the Expenditure Schedule and Purchase Order forms that barbering services were being completed on patients and customers. However, it was determined based on the various complaints and follow-up checks by the VA Medical Center staff that in many instances these services were not being performed.

4

> You were previously counseled regarding this inappropriate conduct on at least two (2) previous occasions. You were informed on those occasions that this type of conduct would not be tolerated and could result in your removal from Federal Service.

(*Id.*)

Plaintiff and his union representatives discussed the proposed termination with John Wordlaw, Regional Manager for VCS, (*id.*, Ex. 7 at 5), and Wordlaw memorialized that discussion as follows:

> They felt that [plaintiff's] performance had been rated successful in the preceding two years and that he [had] not been given appropriate counseling to warrant[ ] the proposed action . . . . They felt that [plaintiff] should be given an opportunity to improve his performance. [Wordlaw] reminded the stewards that the action being proposed to [plaintiff] was based on conduct and not performance. They disagreed with the assessment but offered nothing additional that would support their case.

(*Id.*, Ex. 6 at 4.)

When asked about all the complaints against him, plaintiff testified that it was "miscommunication," and "not necessarily evidence." (*Id.*, Ex. 2 at 43.) He admits to some clerical errors with regard to the incidents. (*Id.* at 18-19.) However, he contends that he was an excellent barber. (*See* doc. 21 at 4.) He has submitted evidence that his white co-worker, Larry Davidson, (doc. 1 ¶ 9), had often cut patients while shaving them and he gave bad haircuts, (doc. 17, Ex. 2 at 51-52; doc. 27 at 1-3).

### III. DISCUSSION

Plaintiff alleges that defendant terminated him on the basis of his race and awarded a contract to a white employee, in violation of federal law. Plaintiff also alleges causes of

action for outrage, negligent supervision, negligent selection, negligent infliction of emotional distress, and conspiracy.

**A. TERMINATION**

Plaintiff alleges that defendant "fired him under a pretext of poor job performance when in fact it was to eliminate him simply to get a contract awarded to a Caucasian employee." (Doc. 1¶ 10.) Defendant contends that plaintiff cannot establish that his decision to terminate plaintiff was racially motivated.

The court employs the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), when analyzing employment discrimination cases based on circumstantial evidence.[2] Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. *See Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *See McDonnell Douglas*, 411 U.S. at 802. If the defendant succeeds in carrying this burden, then the plaintiff must prove that defendant's articulated reasons are a mere pretext for unlawful discrimination. *See Burdine*, 450 U.S. at

---

[2]Plaintiffs have not presented direct evidence of race discrimination. "Direct evidence is evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)(quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1987)(quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987)))(internal quotations omitted).

253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

> The Eleventh Circuit has held:
>
> A plaintiff may establish a prima facie case of discrimination through circumstantial evidence by proving that (1) [he] belongs to a protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated employees outside [his] classification more favorably; and (4) [he] was qualified to do the job. The plaintiff and the employee [he] identifies as a comparator must be similarly situated "in all relevant respects." The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004); *see also Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.")(citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)).

Plaintiff contends that he and Davidson are similarly situated, even though Davidson had "many years working for the VCS before Plaintiff began his employment." (Doc. 21 at 4.) He also contends that Davidson had deficient barbering skills, (*id*); however plaintiff presented no evidence that defendant had received complaints that Davidson erroneously charged patients' accounts for services not provided. Rather, plaintiff argues that the differences between his charging patients for services he did not perform and Davidson providing poor barbering services are "quite meaningless," because "[i]naccurate record

keeping and negligent barbering both end up doing some harm to the people they are to serve." (*Id.*) The court disagrees that the differences between plaintiff and Davidson are meaningless.

The evidence demonstrates that Davidson is not similarly situated to plaintiff in "all relevant aspects." *See Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)("In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee.") The complaints defendant received concerning plaintiff improperly charging patients accounts is not "nearly identical" to the alleged complaints about Davidson nicking patients or giving bad haircuts. *See Maniccia*, 171 F.3d at 1368. "Without showing that a comparable [white employee] received "nearly identical" complaints, [this court] cannot adequately compare [defendant's] actions towards [plaintiff] and other [white employees]. *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005). The court finds that plaintiff has not shown that he is similarly situated to Davidson; therefore, it finds plaintiff has not established a prima facie case of race discrimination. Defendant's Motion for Summary Judgment as to plaintiff's termination claim is due to be granted. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Even assuming, for purposes of discussion, that plaintiff could establish a prima facie case of race discrimination with regard to defendant's decision to terminate him, the court

finds nevertheless that plaintiff has not shown a disputed issue regarding whether defendant's articulated reason for his termination is unworthy of credence.

Defendant terminated plaintiff for "[i]nappropriate charge of VCS customer accounts for barbering services not rendered." (Doc. 17, Ex. 6 at 2.) This reason is sufficient to shift the burden to plaintiff to prove defendant's articulated reason is unworthy of credence. *See Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998).

Plaintiff may establish that defendant's articulated reason is unworthy of credence "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989). If plaintiff chooses to establish pretext by showing that her employer's proffered reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). Plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)(quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)), *cert. denied sub nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045 (1998). Moreover, plaintiff cannot prove pretext simply by quarreling with the wisdom of his former employer's decision. *Chapman*,

9

229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43).

The "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Property & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002). "When evaluating a charge of discrimination, [the court] must focus on the actual knowledge and actions of the decision-maker." *Id.* at 1274 (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) and citing *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001)).

Defendant has presented evidence that Dvorak and Wordlaw based their decision to terminate plaintiff on verified incidents of plaintiff billing VA patients for services they did not receive. In opposition, plaintiff alleges that he had received a "successful" evaluation, he only had three billing errors in his three years with defendant, he had the most difficult and combative patients, Davidson received complaints for "nicking patients," and some of his co-workers were unaware of complaints about his work. (Doc. 21 at 2.) The court finds that this evidence merely quarrels with defendant's decision to terminate plaintiff; therefore, it is not sufficient evidence to rebut defendant's articulated reason that it decided to terminate plaintiff because of incidents of erroneous billing. *Chapman*, 229 F.3d at 1029.

Based on the foregoing, the court finds that defendant's Motion for Summary Judgment as to plaintiff's termination claim is due to be granted.

**B. CONTRACT**

Plaintiff alleges, "Defendant[ ] awarded a contract for Barbering to a Caucasian over him without consider[ation of] his bid for the contract even though he was just as qualified to bid on the contract . . . ." (Doc. 1 ¶ 11.) The record contains no evidence that plaintiff ever submitted a bid for the barbering contract. Therefore, plaintiff's claim that Davidson was awarded the barbering contract over his "bid for the contract" is due to be denied.

**C. OUTRAGE, NEGLIGENT SUPERVISION, NEGLIGENT SELECTION, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND CONSPIRACY**

Plaintiff alleges:

1. "Defendant, Department of Veterans Affairs[,] [was] negligent in [its] selection of supervisors to monitor employment relations for the services of barbering and this lack of supervision caused the wrongful termination and discrimination to occur.' (Doc. 1 ¶ 12.)

2. "Defendant, Department of Veterans Affairs[,] [was] negligent in selecting employee supervisors, and this negligence caused the wrongful termination and discrimination to occur." (*Id*. ¶ 13.)

3. "[T]he actions by the . . . Department of Veterans Affairs and its employees were beyond the bounds of decent society and were therefore outrageous." (*Id*. ¶ 14.)

4. "Defendant[ ] by [its] negligent actions . . . caused the Plaintiff to suffer severe emotional distress." (*Id*. ¶ 15.)

5. "[T]he Department of Veterans Affairs and its employees conspired together to remove Plaintiff from his position as barber with the pretext claim of poor job performance and had the sole intention of awarding the contract for barbering to [its] employee, Larry Davidson, without allowing [plaintiff] the opportunity to bid on the contract." (*Id*. ¶ 16.)

Defendant contends that these claims are due to be dismissed because they are pre-empted by the remedies provided in the Civil Service Reform Act (CSRA). (*See* doc. 16 at 13-14.) Plaintiff did not address defendant's argument that these claims should be dismissed. "[C]ourts commonly grant summary judgment as to claims which the plaintiff failed to address in response to a summary judgment motion." *Barnes v. Crowne Investments, Inc.*, 391 F. Supp. 2d 1108, 1114 (S.D. Ala. 2005)(citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001); *Boex v. OFS Fitel, LLC*, 339 F. Supp. 2d 1352, 1371 (N.D. Ga. 2004)); *see also Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1097 (M.D. Ala. 2005)("The court finds that the entry of summary judgment in favor of [defendant] on the state law claims is appropriate based upon [plaintiff's] inadequate response to [defendant's] arguments") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004))).

The court finds that plaintiff, by not responding to defendant's argument, has abandoned his outrage, negligent supervision, negligent selection, negligent infliction of emotional distress, and conspiracy claims, and such claims will be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of January, 2006.

                                             */s/ Sharon Lovelace Blackburn*
                                             SHARON LOVELACE BLACKBURN
                                             UNITED STATES DISTRICT JUDGE